UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

PNC Bank, National Association,
a national banking association,

    Plaintiff,

vs

Marketing Goldmines Consulting LLC, a
Michigan limited liability company,
Antonio Gates and Joseph M. Micallef,

    Defendants.

Case No. **20-cv-10672**
Hon.
Magistrate Judge

---

Plunkett Cooney
By: Douglas C. Bernstein (P33833)
Patrick Lannen (P73031)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
dbernstein@plunkettcooney.com
plannen@plunkettcooney.com

---

## **COMPLAINT**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint.

/s/ Douglas C. Bernstein (P 33833)

NOW COMES Plaintiff, PNC Bank, National Association ("PNC"), by and through its attorneys, Plunkett Cooney, and for its Complaint, states:

## COMMON ALLEGATIONS

## THE PARTIES

1. Plaintiff PNC is a national banking association, which is a citizen of Pennsylvania that maintains its principal offices at One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania.

2. Defendant Marketing Goldmines LLC ("Marketing") is a Michigan limited liability company, which is a citizen of Michigan, maintaining its principal place offices at 251 Telegraph Road 203, Bloomfield Township, Michigan.

3. Defendant Antonio Gates ("Gates") is a citizen of California, who maintains a domicile at 17776 Vineyard Lane, Poway, California.

4. Gates is the sole member of Marketing.

5. Defendant Joseph M. Micallef ("Micallef") is an individual, who is a citizen of Michigan, whose address is 5366 Rochester Road, Troy, Michigan.

## JURISDICTION AND VENUE

6. Jurisdiction over this matter properly rests within this Honorable Court pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2).

## COUNT I

### **BREACH OF NOTE**

8.  PNC incorporates the preceding Paragraphs by reference, with the same force and effect as if fully repeated.

9.  On March 1, 2017, Marketing signed a Promissory Note in favor of PNC in the principal sum of $1,680,000.00 (the "Note"). **Exhibit 1**.

10.  Marketing failed to repay the sums owed to PNC as and when agreed upon the maturity of the Note.

11.  Based upon the foregoing default, PNC made demand upon Marketing for the full and immediate repayment of all sums owed thereunder.

12.  Marketing has failed, neglected and refused to honor PNC's demand for payment.

13.  As of March 11, 2020, there remained a principal balance owed from Marketing to PNC, pursuant to the Note, of $1,509,136.93, together with accrued interest of $9,660.19, and late charges of $100.00, for a total, exclusive of contractually agreed upon costs and fees, of $1,518,897.12.

14.  Pursuant to the terms of the Note, Marketing agreed to reimburse PNC for its costs and fees incurred in its collection.

**WHEREFORE,** PNC prays that this Honorable Court enter judgment in its favor, and against Marketing, in the sum of $1,518,897.12, and award PNC

its costs and reasonable attorneys' fees incurred in the prosecution of this action, together with interest thereon as provided for by statute from and after March 11, 2020.

## COUNT II

## **BREACH OF THE GUARANTY**

15. PNC incorporates the preceding Paragraphs by reference, with the same force and effect as if fully repeated.

16. In consideration of the extension of credit to Marketing as described above, Gates executed a Guaranty and Suretyship Agreement favor of PNC (the "Guaranty"), pursuant to which Gates agreed to guarantee the repayment of the indebtedness of Marketing to PNC.  **Exhibit 2**.

17. As set forth above, Marketing is in default of its obligations under the Note.

18. PNC made demand of Gates for the full and immediate repayment of all sums owed pursuant to the Guaranty.

19. Despite demand, Gates has failed, neglected and refused to repay the sums owed to PNC pursuant to the Guaranty.

20. As of March 11, 2020, there remained a principal balance owed from Gates to PNC, pursuant to the Guaranty, of $1,509,136.93, together with

accrued interest of $9,660.19, and late charges of $100.00, for a total, exclusive of contractually agreed upon costs and fees, of $1,518,897.12.

21. Pursuant to the terms of the Guaranty, Gates agreed to reimburse PNC for its costs and fees incurred in its enforcement.

**WHEREFORE,** PNC prays that this Honorable Court enter judgment in its favor, and against Gates in the sum of $1,518,897.12, and award PNC its costs and reasonable attorneys' fees incurred in the prosecution of this action, together with interest thereon as provided for by statute from and after March 11, 2020.

## COUNT III

## JUDICIAL FORECLOSURE

22. PNC incorporates the preceding Paragraphs by reference, with the same force and effect as if fully repeated.

23. In consideration of the extension of credit to Marketing, as set forth above, and as security for the repayment of the Note, Marketing executed a Mortgage (the "Mortgage") in favor of PNC dated as of March 1, 2017, encumbering real property commonly known as 3641-3681 Gratiot, Detroit, Michigan (the "Property"), which was recorded by the Wayne County Register of Deeds on March 7, 2017 in Liber 53559, Page 1027. **Exhibit 3**.

5

24. As set forth above, Marketing is in default of its obligations to PNC under the terms of the Note.

25. Upon the default of Marketing, PNC has the right to foreclose the Mortgage, either by advertisement or judicially.

26. As of March 11, 2020, there remained a principal balance owed from Marketing to PNC, pursuant to the Note, of $1,509,136.93, together with accrued interest of $9,660.19, and late charges of $100.00, for a total, exclusive of contractually agreed upon costs and fees, of $1,518,897.12.

27. No proceeding at law has been instituted to recover the debt evidenced by the Note and secured by the Mortgage, or any part thereof, and no part of the debt has been collected or paid.

28. The legal description of the Property is:

Land in the City of Detroit, Wayne County, Michigan, described as:

PARCEL 1:

Lots 25 through 34, inclusive, LAMBERT'S SUBDIVISION, according to the plat thereof as recorded in Liber 16, Page 38 of Plats, Wayne County Records.

PARCEL 2:

The West 18.0 feet of Lot 33 and Lots 34 through 38, inclusive, and all of vacated alley in rear of said lots and lying East of the West line of Lot 35, FISHER AND BERNART'S SUBDIVISION, according to the plat thereof as recorded in Liber 8, Page 48 of Plats, Wayne County Records. And all of the vacated alley lying East of and adjacent to the West 18 feet of Lot 33 of FISCHER AND BERNART'S SUBDIVISION OF PART OF LOT NO. 20, according to the plat thereof recorded in Liber 8 of Plats, Page 48, Wayne County Records and lying West of and adjacent to Lots 27, 28 and 29 of LAMBERT'S SUBDIVISION, according to the plat thereof recorded in Liber 16 of Plats, Page 38, Wayne County Records.

PARCEL 3:

The South 100.0 feet of Lot 20, North of Gratiot Avenue, as widened, lying East of the East line of "Outlot 19 Subdivision" of the Leib Farm and West of West line of Lots 25, 26 and 27, LAMBERT'S SUBDIVISION, according to the plat thereof as recorded in Liber 16, Page 38 of Plats, Wayne County Records, being a division in partition of the Leib Farm, as recorded in Liber 45, page 654, Wayne County Records.

PARCEL 4:

Part of Outlot 19, LEIB FARM, lying North of Gratiot Avenue, as widened, and South of Superior Street described as follows: Beginning at the intersection of the South line of Superior Street, and the Easterly line of said Outlot 19 of the Subdivision of the Leib Farm, said intersection being also the Northwesterly corner of Lot 38 of FISCHER AND BERNART'S SUBDIVISION; thence South 25 degrees 43 minutes East, 291.0 feet to the Northerly line of Gratiot Avenue; thence South 26 degrees 02 minutes West 112.76 feet along the Northerly line; thence North 26 degrees 13 minutes West, 359.86 feet to the South line of Superior Street; thence North 63 degrees 41 minutes East along said line 91.70 feet to the point of beginning.

7

Parcels 1, 2, 3 and 4 are together assessed as:

N GRATIOT PT OF 19 DESC AS FOLS BEG AT A PTE IN N LINE GRATIOT BG ALSO IN E LINE SD LOT TH S 26D 02M W 126.5 FT TH N 64D 33M W 3.95 FT TH N 26D 40M W 222.21 FT TH N 33D 05M E 17.27 FT TH N 26D 13M W 133.53 FT TH N 63D 41M E 91.7 FT TH S 25D 43M E 291 FT TO POB 20 AND VAC ALLEY ADJ PLAT OF LIEB FARM L45 P664 DEEDS, WCR 13/1 38 THRU 34 W 18 FT 33 FISCHER & BERNARTS SUB L8 P48 PLATS, WCR 13/94 25 THRU 34 LAMBERTS SUB L16 P38 PLATS, WCR.

Tax Item No. 001857-65, Ward 13

29. Upon information and belief, Defendant Micallef may claim an interest in the Property. See **Exhibit 4**.

WHEREFORE, PNC prays that this Honorable Court:

A. Determine the amount due to PNC pursuant to the Note, and enter a judgment for such amount in favor of PNC, together with its expenses, actual attorney fees and other costs; and,

B. Upon the failure of Marketing to pay such amount to PNC, order that the Property be sold at public sale to the highest bidder, pursuant to the applicable statutes; and,

C. Provide that, subsequent to the foreclosure sale, and the running of any period of redemption, upon the failure of Marketing to pay the indebtedness determined by this Court to be due to PNC, Marketing and all parties claiming from or under it be foreclosed and barred from any and all equity of redemption and all claims of, in and to the Property; and,

D. Order Marketing and all parties claiming from or under it, or who have otherwise come into possession of the Property or any portion thereof, during the pendency of this suit, to deliver and yield possession of the Property upon production or authentication of the deed to be executed pursuant to such sale, and a certified copy of the order of judgment confirming the report of such sale, after such order of judgment has become absolute; and,

E.   Order the net proceeds received from such public sale to be paid to PNC in satisfaction, or in partial satisfaction, of the amount determined to be due to PNC pursuant to the Note, with any surplus realized from the sale to be disposed of and distributed as the Court may direct; and,

F.   Enter a judgment in favor of PNC and against Marketing and Gates, jointly and severally, for the amount of the deficiency following the public sale and report of sale; and,

G.   Grant PNC such other relief as may be deemed fair and equitable.

## COUNT IV

## **CLAIM AND DELIVERY**

30.   PNC incorporates the preceding Paragraphs by reference, with the same force and effect as if fully repeated.

31.   In conjunction with PNC's extension of credit to Marketing, and to secure the repayment of the Note, on March 1, 2017, Marketing signed a Security Agreement (the "Security Agreement") in favor of PNC, granting it a lien upon all of its assets (the "Assets"). **Exhibit 5**.

32.   As set forth above, Marketing is in default of its obligations to PNC under the terms of the Note.

33.   Pursuant to the terms of the Security Agreement and the Michigan Uniform Commercial Code, PNC is entitled to possession of the Assets upon the default of Marketing.

9

34. The security interest of PNC was properly perfected, as evidenced by the UCC-1 financing statement filed with the Michigan Secretary of State. **Exhibit 6**.

35. The Assets consist of independent pieces of property. Due to the lack of information furnished, PNC is unable to estimate the fair market value of the Assets, but believes that it is less than the balance owed to PNC.

36. Pursuant to the terms of the Security Agreement, PNC is entitled to recover all costs, expenses and reasonable attorneys' fees from Marketing which were incurred in locating and obtaining possession of the Assets.

WHEREFORE, PNC prays that this Honorable Court:

A. Issue an Order requiring Marketing to show cause why this Honorable Court should not order the Assets to be delivered to it forthwith; and,

B. Order and adjudge that Marketing immediately deliver an inventory of the Assets to PNC, describing same by item, type and location, or permitting PNC to perform same forthwith, together with an accounting of the proceeds realized from sales of same; and,

C. Order and adjudge that Marketing deliver the Assets to PNC, or that PNC be permitted to seize same within 21 days; and,

D.     Order and adjudge PNC to be authorized to dispose of the Assets pursuant to Michigan Compiled Law §440.9610; and,

E.     Enter judgment in favor of PNC, and against Marketing and Gates, jointly and severally, for any deficiency that may exist after the disposition of the Assets pursuant to Paragraph D above, together with costs, reasonable attorneys' fees and interest as provided for by statute; and,

F.     Grant PNC any other relief as this Honorable Court shall deem just and appropriate.

## COUNT V

## APPOINTMENT OF RECEIVER

37.    PNC incorporates the preceding Paragraphs by reference, with the same force and effect as if fully repeated.

38.    Marketing failed to pay the real estate taxes assessed against the Property as and when required for 2017, 2018 and 2019, totaling approximately $275,000.00, resulting in foreclosure proceedings being brought by the taxing authority.

39.    The value of the Property is less than the amount of the debt owed to PNC which is secured thereby.

11

40. Under the terms of the Mortgage, upon the occurrence of an event of default, Marketing consented to the appointment of a receiver for the Property. See Exhibit 3 at Section 13(e).

41. Based upon the foregoing facts and circumstances, the appointment of a receiver for the Property and the Assets is appropriate, and authorized by law.

WHEREFORE, PNC prays that this Honorable Court enter an order:

A. Appointing a receiver for the Property and the Assets for the purposes of preventing waste, and the enforcement and performance of the provisions of the Note, the Mortgage, the Security Agreement, and other related loan documents; and,

B. Authorizing the receiver to take possession of the Property, the rents and income derived therefrom, and the Assets; and, to do all things necessary or appropriate to obtain maximum realization therefrom; and, to preserve and protect same, and to exercise such control and management of the Property, including but not limited to repair, maintenance, payment of taxes, insurance and indebtedness owed to PNC, as the Court may direct, pursuant to the provisions of the applicable loan documents and law; and,

C. Requiring Marketing to turn over to the receiver all income from the Property and the Assets from and after the date of default, except to the

extent such income was used for the operation, management and maintenance thereof; and,

D.      Enjoining Marketing and all persons and entities acting by, through or in concert with it, from interfering in any manner with the receiver's operation and management of the Property and the Assets which secure repayment of the indebtedness owed to PNC; the collection of rents or other income generated by the Property or by the Assets which secure the repayment of the indebtedness owed to PNC; or, the receiver's performance of any other powers or duties conferred upon the receiver by this Court, all during the pendency of this action, and until redemption of the Property or the expiration of the period of redemption; and, to grant the receiver such other authority as the Court may deem fair and equitable; and,

E.      Granting PNC such other relief as the Court deems appropriate.

>Plunkett Cooney
>
>By: /s/DOUGLAS C. BERNSTEIN
>Douglas C. Bernstein (P33833)
>Patrick Lannen (P73031)
>Attorneys for Plaintiff
>38505 Woodward Avenue, Suite 100
>Bloomfield Hills, MI 48304
>(248) 901-4000
>dbernstein@plunkettcooney.com
>plannen@plunkettcooney.com

March 12, 2020
Open.21511.00840.23745185-1

13