UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, NATIONAL
ASSOCIATION, a national banking
association,

        Plaintiff,                         Case No. 20-cv-10672

                                                 Paul D. Borman
v.                                        United States District Judge

MARKETING GOLDMINES
CONSULTING LLC, a Michigan
limited liability company, ANTONIO
GATES and JOSEPH M. MICALLEF

        Defendants.

_____/

## **OPINION AND ORDER GRANTING PLAINTIFF PNC BANK'S MOTION FOR APPOINTMENT OF RECEIVER (ECF NO. 18)**

On March 12, 2020, Plaintiff PNC Bank, National Association filed this action against Defendants Marketing Goldmines Consulting LLC, Antonio Gates, and Joseph M. Micallef, asserting claims for breach of promissory note, breach of the Guaranty, judicial foreclosure, claim and delivery, and appointment of a receiver, based on Defendants alleged failure to repay a loan extended to them by Plaintiff PNC Bank. Defendants were served with the Complaint but have failed to appear, and PNC Bank has obtained clerk's entries of default as to all three defendants. Now before the Court is Plaintiff PNC Bank's Motion for Appointment of Receiver (ECF

No. 18). The Court does not believe oral argument will aid in its disposition of the motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons set forth below, the Court GRANTS Plaintiff's Motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Statement of Facts

On March 1, 2017, PNC Bank extended a $1,680,000.00 loan to Defendant Marketing Goldmines Consulting LLC ("Marketing"), and Marketing signed a Promissory Note in favor of PNC Bank in that amount (the "Note"). (ECF No. 18-3, the Note.) Repayment of the loan is secured by a lien upon all of Marketing's asserts, by a mortgage upon a strip mall located at 3641-3681 Gratiot, Detroit, Michigan (the "Property"), and by the personal guarantee of Defendant Antonio Gates, the sole member of Marketing. (ECF No. 18-4, the Mortgage; ECF No. 18-5, the Security Agreement; ECF No. 1-3, Guaranty and Suretyship Agreement.) The Note, Mortgage, Security Agreement, and Guaranty are all dated March 1, 2017. (*See id.*)

PNC Bank claims that despite there being tenants at the Property, Marketing failed to make payments to PNC Bank under the terms of the Note. (Compl. ¶¶ 10-12, PgID 3; Pl's Mot. at p. 1, PgID 136.) Marketing also failed to pay the real estate

taxes assessed against the Property for the 2017, 2018, 2019 and 2020 tax years, resulting in foreclosure proceedings being brought by the taxing authority. (ECF No. 18-7, PgID 219; Compl. ¶ 38, PgID 11.) In order to protect its interests in the Property under the Mortgage, and to avoid forfeiture and foreclosure to the taxing authority, on March 13, 2020, PNC Bank paid the outstanding 2017, 2018, and 2019 real estate taxes then owed, totaling $274,181.20. (ECF No. 18-8, PID 221.)

Based upon the default, PNC Bank states that it accelerated the maturity date of the Note and made a demand upon Marketing for the full and immediate repayment of all sums owed. Marketing has failed and refused to honor PNC Bank's demand for payment. (Compl. ¶¶ 11-12, PgID 3.)

PNC Bank claims that as of October 27, 2020, there remains a principal balance owed from Marketing to PNC Bank, pursuant to the Note, of $1,509,136.93, together with accrued interest of $50,637.45, and late charges of $900.00, for a total, exclusive of contractually agreed upon costs and fees, of $1,560,674.38. (Pl.'s Mot. at p. 5, PgID 139.) PNC Bank asserts that Defendants also agreed to reimburse PNC Bank for all costs and fees incurred in the enforcement of its rights under the Note, Mortgage, Security Agreement and other loan documents. (*Id.*)

### B.    Procedural History

On March 12, 2020, PNC Bank filed a Complaint against Defendants Marketing, Gates and Micallef, alleging five claims for: (1) breach of the Note; (2) breach of the Guaranty and Suretyship Agreement; (3) judicial foreclosure; (4) claim and delivery; and (5) appointment of a receiver. (ECF No. 1, Complaint.)

Plaintiff PNC Bank states that all three Defendants were served, with Marketing finally being served via alternate service. (ECF Nos. 5, 6, 7, 11.) Defendants failed to appear, and PNC Bank obtained clerk's entries of default as to each Defendant on October 28, 2020. (ECF Nos. 15, 16, 17.)

On October 29, 2020, PNC Bank filed the instant Motion for Appointment of Receiver, nominating M. Shapiro Management Company LLC to serve as the Court-appointed receiver. (ECF No. 18, Plaintiff's Mot.) There has been no response to the motion.

## II.  LEGAL STANDARD

Rule 66 of the Federal Rules of Civil Procedure allows for the appointment of receivers in conformity with traditional rules of equity. Fed. R. Civ. P. 66; *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2981 (3d ed.

4

2020).[1] Rule 66 provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.

"A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Cap. Grp.*, 462 F.3d at 551. "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* "A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting Wright & Miller, *supra*, § 2983).

"[T]he form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (citation omitted). In making this determination, district courts carefully weigh factors, including: "(1) the

---

[1] "[T]he weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law." *Fed. Nat'l Mortg. Ass'n v. Mapletree Inv. Ltd., P'ship*, No. 10-CV-10381, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010) (collecting cases).

adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership." *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014); *see also Fed. Nat'l Mortg. Ass'n v. Mapletree Inv. Ltd., P'ship*, 10-cv-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010); *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 432 (E.D. Mich. 1995). "Moreover, the parties' advance consent to the appointment of a receive[r] is a strong factor weighing in favor of appointing one." *PNC Bank*, 15 F. Supp. 3d at 758.

### III.  ANALYSIS

PNC Bank argues that the balance of factors weighs in favor of appointment of a receiver. PNC Bank first states that pursuant to the terms of the Mortgage, Marketing: (1) agreed to pay taxes assessed against the Property before the imposition of interest and penalties (Mortgage ¶ 2(b), PgID 185); (2) acknowledged

6

PNC Bank's right to the appointment of a receiver for the Property upon the occurrence of an event of default (*id.* ¶ 13(e), PgID 192); and (3) expressly consented to such appointment upon the commission of waste (*id.* ¶ 33, PgID 197). Similarly, Marketing agreed under the terms of the Security Agreement that, upon the occurrence of an event of default, PNC Bank had the right to take possession of and sell the Collateral, which "includes all personal property of the Grantor." (Security Agreement ¶¶ 1, 9, PgID 204, 208.) While the parties' contractual assent to appointment of a receiver is not automatically dispositive, it is a "strong factor weighing in favor of appointing one." *PNC Bank*, 15 F. Supp. 3d at 758; *see also Mapletree Inv.*, 2010 WL 1753112, at *3 (considering, "[i]n the absence of clear authority on the issue" "the parties' consent as a strong factor weighing in the plaintiff's favor, but not dispositive of the inquiry"). Thus, the Court finds that Defendants' consent to receivership in the event of a default weighs strongly in favor of appointment of a receiver in this case.

PNC Bank further argues that an overall analysis of the factors discussed above favors appointment of a receiver in this case. PNC Bank contends, regarding the "adequacy of the security" and the "financial position of the mortgagor," that the value of the Property is believed to be less than the amount owed to PNC Bank and to the taxing authority, and states that Marketing failed to repay the Note upon its

7

maturity and also failed to pay the real estate taxes for three years, all showing at least a "doubtful financial condition." (Pl.'s Mot. at pp. 6-7, PgID 140-41, citing *Resolution Trust Corp. v. Fountain Circle Assoc. Ltd. P'ship*, 799 F. Supp. 48, 52 (N.D. Ohio 1992) (noting that failure to make debt payments when due, for over two years, showed insolvency or at least a doubtful financial condition); *Mapletree Inv.*, 2010 WL 1753112, at *4-5 ("Mapletree's failure to surrender to Fannie Mae the monthly rents and to pay its monthly installments under the Note demonstrate that Mapletree itself is in a poor financial condition.").) "Courts have found 'the adequacy of the security and the financial position of the borrower to be the most important' factors in evaluating whether to appoint a receiver." *PNC Bank*, 15 F. Supp. 3d at 758 (collecting cases); *Mapletree Inv.*, 2010 WL 1753112, at *3 (same). The Court finds that these factors weigh in favor of appointing a receiver.

PNC Bank further argues that Defendants' failure to pay the real estate taxes for three years makes the Property subject to being lost through a tax foreclosure. (Pl.'s Mot. at p. 7, PgID 141.) Thus, the Property at issue is in "imminent danger of … being lost, concealed, injured, diminished in value or squandered[,]" weighing in favor a appointment of a receiver. *See Mapletree Inv.*, 2010 WL 1753112, at *5. The Court agrees and finds that not appointing a receiver would cause extreme harm to PNC Bank, and that appointing a receiver would not harm Defendants. *See id.* (noting

8

that the defendant agreed to receivership and "there is little harm in enforcing the terms of the parties' bargain").

PNC Bank argues that it has a high likelihood of success on the merits in this case because "[t]his matter is a straightforward collection and foreclosure, where the default and entitlements to relief are not in doubt." (Pl.'s Mot. at p. 9, PgID 143.) *See Mapletree Inv.*, 2010 WL 1753112, at *5 ("Fannie Mae has also made a very strong showing that it will succeed on the merits. It brings a very straightforward claim of breach of the loan and mortgage agreements and seeks to enforce those agreements by an order requiring Mapletree to turn over possession of the property and all rents collected. Mapletree admits it is in default of the agreements."); *Federal Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 WL 374033, at *3 (E.D. Mich. Jan. 25, 2010) ("Maple Creek does not dispute that it executed the Note and Mortgage or that it subsequently failed to make several monthly mortgage payments. Thus[,] Fannie Mae's likelihood of success on the merits is high."). This Court similarly finds that PNC Bank has a high likelihood of success on the merits in this action.

While PNC Bank admits that it does not know whether or not fraudulent conduct has occurred, it states that it has made several attempts to communicate with Marketing's principal, Defendant Gates, but has not received a response. (Pl.'s Mot.

9

at pp. 8-9, PgID 142-43.) PNC Bank contends that its interests and prospects for repayment will be impaired absent Court intervention because its efforts to reach out to Defendants has been unsuccessful. (*Id*.) This argument, along with the fact that PNC Bank had to pay the delinquent taxes on the Property to avoid foreclosure, also goes to the factor of "whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership." *See PNC Bank*, 15 F. Supp. 3d at 758.

PNC did not otherwise discuss the remaining factor, "inadequacy of legal remedies." However, Defendants have failed to respond to the Complaint after being served and are currently in default. Considering this, together with Defendants' failure to repay the Note as agreed, or the taxes which have been assessed against the Property, the Court find that other legal remedies would be inadequate to protect PNC Bank's interest in the Property and its claims against Defendants at this stage of the litigation.

Thus, considering all the factors discussed above, the Court finds that a substantial majority of the relevant factors weigh in favor of appointing a receiver in this case to protect PNC Bank's security interest in the Property.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** PNC Bank's Motion for Appointment of Receiver (ECF No. 18). An Order appointing M. Shapiro Management Company LLC as receiver in this case shall issue separately.

IT IS SO ORDERED.

s/Paul D. Borman

Paul D. Borman
United States District Judge

Dated: January 4, 2021